Salvador J. Marcello and Florence Marcello [1] v. Commissioner. Joseph C. Marcello and Barbara Marcello v. Commissioner. Marcello v. Commissioner
Docket Nos. 3535-64, 3743-65, 3981-65, 2907-66.
United States Tax Court
T.C. Memo 1969-189; 1969 Tax Ct. Memo LEXIS 103; 28 T.C.M. (CCH) 959; T.C.M. (RIA) 69189; September 23, 1969, Filed deQuincy V. Sutton, Greater Mississippi Life Bldg., Meridian, Miss., for the petitioners. William O. Lynch and Harold Friedman, for the respondent. FEATHERSTON
Memorandum Findings of Fact and Opinion FEATHERSTON, Judge: Respondent determined deficiencies in petitioners' income *104 tax and additions to tax as follows: *10 Salvador J. and Florence Marcello: *10
Deficiencies
Docket No.
TaxableYear
Income Tax
Additions To Tax,Sec. 6653(a) [2]
Total
3535-64
1960
$24,796.93
$1,239.85
$26,036.78
3981-65
1961
2,022.50
101.13
2,123.63 *10 Joseph C. and Barbara Marcello: *10
Deficiencies
Docket No.
TaxableYear
Income Tax
Additions To Tax,Sec. 6653(a) [2]
Total
3743-65
1961
$1,095.38
$ 54.77
$ 1,150.15
2907-66
1962
2,154.87
None
2,154.87 960 The principal issues for decision arise from adjustments in the income reported by a partnership, Town & Country Motel (hereinafter referred to as Town & Country), of which Salvador J. Marcello (hereinafter Salvador) was a member during 1960 and part of 1961 and Joseph C. Marcello (hereinafter Joseph) was a member during the remainder of 1961 and all of 1962. The partnership issues are as follows: (1) Whether, for the taxable years 1960, 1961, and 1962, [3] payments *105 of interest made by Town & Country to the Whitney National Bank in the respective amounts of $2,126.19, $1,272.03, and $1,265.24 are deductible under section 163. (2) Whether, for the taxable years 1961 and 1962, payments of interest made by Town & Country to the Krauss Company Employees Pension Fund in the respective amounts of $12,720.84 and $7,705.83 are deductible under section 163. (3) Whether, for the taxable years 1961 and 1962, payments of interest made by Town & Country to Rex Finance Company are deductible under section 163. (4) Whether a check in the amount of $3,000, which was deposited in Town & Country's bank account on October 31, 1960, is taxable income which Town & Country did not report for its taxable year 1961. (5) Whether $2,000 received by Town & Country from Rex Finance Company on or about November 30, 1960, is taxable income which Town & Country did not report for its taxable year 1961. (6) Whether, during its taxable years 1961 and 1962, Town & Country paid to New Orleans Linen Service the respective amounts of $10,465.47 and $2,458.17, which *106 amounts were claimed as deductions for linen supply expenses, and if so, whether such amounts were paid for services performed for, or materials and supplies furnished to, Town & Country. (7) Whether the amount of $1,963.80 paid by Town & Country to Jefferson Parish, Louisiana, during its taxable year 1961, representing payment to the Parish of retail sales taxes collected by Town & Country during the calendar year 1959, constitutes an allowable deduction to Town & Country for its taxable year 1961. The following additional issues arise from determinations in the statutory notices issued to Joseph C. and Barbara Marcello: (8) Whether, as a result of agreed adjustments to the income of Town & Country and our conclusions on the foregoing issues, application of the percentage limitations of section 213 requires an increase in the amount of the medical expense deduction for 1961. (9) Whether, as a result of agreed adjustments to the income of Town & Country and our conclusions on the foregoing issues, application of the percentage limitations of section 141 requires an increase in the standard deduction for 1962. The notices of deficiency also present the following additional *107 issue: (10) Whether all or any part of the underpayment of income taxes due by Salvador J. and Florence Marcello for 1960 and 1961, and by Joseph C. and Barbara Marcello for 1961, was due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). General Findings of Fact Salvador J. and Florence Marcello, husband and wife, were legal residents of Metairie, Louisiana, at the time they filed their petitions. They filed their joint income tax returns for 1960 and 1961 with the district director of internal revenue at New Orleans, Louisiana. Joseph C. and Barbara Marcello, husband and wife, were legal residents of Jefferson Parish, Louisiana, at the time their petitions were filed. They filed their joint income tax returns for 1961 and 1962 with the district director of internal revenue at New Orleans, Louisiana. At all times relevant to these proceedings Town & Country operated a motel located at Metairie, Louisiana. Town & Country kept its books and records on a cash basis for deductions only, and filed its partnership income tax returns on the basis of a fiscal year ending January 31. From February 1, 1956, through August 31, 1960, the *108 partners in Town & Country were Carlos Marcello, Salvador, Frank Occhipinti, and Rosario Occhipinti. Each was entitled to share in the profits and losses to the extent of 25 percent. For convenience, 961 each of the partners will usually be referred to herein by his given name. On September 1, 1960, Joseph "superseded" Salvador as a partner and at that time succeeded to his 25 percent interest in the profits and losses. Accordingly, profits of Town & Country for its taxable year 1961 were shared by the partners in the following proportions: Carlos Marcello
25 percent
Salvador J. Marcello
7/12 of 25 percent
Joseph C. Marcello
5/12 of 25 percent
Frank Occhipinti
25 percent
Rosario Occhipinti
25 percent
Throughout the taxable year 1962, Carlos, Joseph, Frank, and Rosario constituted the partners in Town & Country, and each was entitled to share in profits and losses to the extent of 25 percent. In the notices of deficiency issued herein numerous adjustments were made in the income of Town & Country. Many of the disputed items have been settled by the parties or conceded by stipulation, at the trial, or on brief. The specific adjustments to Town & Country *109 income remaining in dispute are as follows: TaxableYear 1960
TaxableYear 1961
TaxableYear 1962
Interest paid to Whitney National Bank
$2,126.19
$ 1,272.03
$ 1,265.24
Interest paid to Krauss Company Employees Pension Fund
12,720.84
7,705.83
Interest paid to Rex Finance Company
220.00
1,100.00
Allegedly omitted income
3,000.00
Receipt from Rex Finance Company
2,000.00
Linen service
10,465.47
2,458.17
Taxes
1,963.80
Total
$2,126.19
$31,642.14
$12,529.24
Issue 1. Interest - Whitney National Bank Findings of Fact During 1956 and 1957 Town & Country Motel, Inc. (hereinafter T. & C. Motel), formerly known as Kim's Desert Inn, Inc., was engaged in constructing a motel in Shreveport, Louisiana. Frank spent about four months in Shreveport supervising the early stages of the construction; later he was replaced in this supervisory work by Rosario. Carlos, Salvador, Rosario, and Frank, along with four other individuals, owned stock in T. & C. Motel. To assist in financing the construction of the motel, the Whitney National Bank, in New Orleans, made a loan of $40,000 on October 4, 1957. A note in that amount was signed on *110 behalf of the partnership and individually guaranteed by Carlos, Salvador, Frank, and Rosario, all of whom were then partners in Town & Country. The $40,000 was deposited on October 7, 1957, in Rosario's personal checking account with the Whitney National Bank. On the same date he drew a draft on this account, and the draft was deposited in the Bossier Bank and Trust Co., Bossier City, Louisiana, to the account of Kim's Desert Inn, Inc. The funds were used in the construction of the Shreveport motel. During the years in issue Town & Country carried the $40,000 note on its books and financial statements as a loan receivable from Frank. Town & Country paid interest on the loan, and claimed interest deductions, in the amounts of $2,126.19, $1,272.03, and $1,265.24 for its taxable years 1960, 1961, and 1962, respectively. Respondent disallowed the claimed deductions. Opinion From the evidence before us we are satisfied that the $40,000 note to the Whitney National Bank was an obligation of the partnership and that its payment was guaranteed by Carlos, Salvador, Frank, and Rosario. They were all stockholders in T. & C. Motel, to which the funds borrowed on the note were ultimately *111 transmitted. And Town & Country admittedly paid to the Whitney National Bank the amounts claimed as interest deductions. These facts are, we believe, sufficient to support the deductibility of the interest payments. [4]
Respondent's main argument is that the record does not establish that the liability to the Whitney National Bank was that of Town & Country as a partnership rather than that of the individual partners. However, the four individuals were equal partners in Town & Country and were equal 962 guarantors of the note. Each of them is, therefore, entitled to deduct his proportionate share of the interest payments, whether such payments were made in discharge of a partnership liability or were made with funds constructively distributed to them and used to discharge their personal liabilities. Since the obligors are identical with the individuals who composed the partnership, this is not a situation where the "interest expense of partner *112 A" is being "deducted by the partnership so as to lessen the taxable income of partner B." Cf. Marcello v. Commissioner, 380 F. 2d 499, 503 fn. 10 (C.A. 5, 1967), affirming in part a Memorandum Opinion of this Court. Issue 2. Interest - Krauss Company Employees Pension Fund Findings of Fact For some time immediately prior to October 30, 1958, the individuals who were partners in Town & Country negotiated for the purchase from M. J. Carbone and L. A. West of a motel property known as Holiday Inn West, located on the outskirts of New Orleans. To hold title to the real estate, Jacqueline, Inc. (hereinafter Jacqueline), was organized under the laws of Louisiana on October 28, 1958, with authorized capital stock of 5,000 shares, of a par value of $100 each, and paid-in capital of $400,000. The articles of incorporation were recorded in the official records of Jefferson Parish, Louisiana, on October 29, 1958. The incorporators and initial officers of Jacqueline were Rosario, president, Frank, vice president, and Joseph H. Connolly, secretary-treasurer. They also were the original subscribers to the Jacqueline stock, subscribing to 2,100, 900, and 1,000 shares, respectively. *113 This stock was issued as follows: StockCertificate Number
Owner of Record
Number ofShares
Par Value
1
Rosario Occhipinti
1,050
$105,000
2
Rosario Occhipinti
1,050
105,000
3
Frank Occhipinti
90
9,000
4
Frank Occhipinti
90
9,000
5
Frank Occhipinti
90
9,000
6
Frank Occhipinti
90
9,000
7
Frank Occhipinti
90
9,000
8
Frank Occhipinti
90
9,000
9
Frank Occhipinti
90
9,000
10
Frank Occhipinti
90
9,000
11
Frank Occhipinti
90
9,000
12
Frank Occhipinti
90
9,000
13
Joseph H. Connolly
500
50,000
14
Joseph H. Connolly
250
25,000
15
Joseph H. Connolly 250
25,000
Total
4,000
$400,000
Although 2,100 shares were issued to Rosario and 900 shares were issued to Frank, these 3,000 shares were beneficially owned one-fourth by Frank, one-fourth by Rosario, and one-half by Carlos Marcello. At the time the stock was issued it was the policy of the franchisor to issue Holiday Inn franchises only in the name of individuals, and accordingly stock ownership was taken in the names of Rosario and Frank, who had had long experience in the operation of motels. The other 1,000 shares, although issued in the name of Joseph *114 H. Connolly, were actually owned by Joseph H. Connolly, Mary Connolly, J. Folse Roy, Frank Rockefort, and Felise Gallenia; the record does not show the respective interests of these individuals. On October 30, 1958, Jacqueline acquired title to the real estate and furnishings used in connection with the operation of Holiday Inn West. The total purchase price of this property was $1,675,000. The contract of purchase and the act of sale show that $400,000 of the purchase price was to be paid in cash. Jacqueline's paid-in capital of $400,000, recited in the articles of incorporation, was provided from three sources. First, Joseph H. Connolly and his group paid in cash of $100,000. Second, a loan of $200,000 was made by the Krauss Company Employees Pension Fund (hereinafter Pension Fund) on a note in the amount of $210,000. The note was signed by Carlos, Salvador, Rosario, and Frank, and was secured by a pledge of certificates numbers 1 and 2 described above, representing 2,1000 shares of Jacqueline stock, and a mortgage on Town & Country's leasehold. Jacqueline's pledge of the 2,100 shares was approved by Carlos and Salvador. Third, Carlos and Rosario gave Carbone and West a note *115 in the amount of $100,000, which was accepted by Carbone and West in discharge of $100,000 of the total down payment of $400,000 to be paid by Jacqueline. Town & Country carried on its books an account showing an investment of $210,000 in Holiday Inn West, and included in the balance sheet accompanying its partnership returns for each of the taxable years an item entitled "Investments," which was comprised in part of its investment in Holiday Inn West. Town & Country paid interest on the $210,000 note in the amount of $12,720.84 during its taxable year 1961 and $7,705.83 963 during its taxable year 1962; such amounts were claimed as deductions and were disallowed in the deficiency notices. By stipulation respondent has "conceded" the deductibility of interest paid to the Pension Fund during 1960, "inasmuch as this adjustment, as to the taxable year 1960, regardless of whether or not it is sustained by the Court, would result in no taxable event to the partners for that said taxable year." Opinion In his reply brief respondent explains that he conceded the deductibility of the 1960 interest payments to the Pension Fund because the individuals liable on the note were entitled *116 to the deductions, "either in the form of a reduced distributive share of the taxable income of Town & Country or a Page 2 deduction on their personal returns." Respondent argues, however, that for the taxable years 1961 and 1962 the situation is different, because Joseph "superseded" Salvador as a partner at the beginning of the eight month of the taxable year 1961, and Joseph was not shown to have had any interest in Jacqueline. Petitioners argue that the stipulation that Joseph "superseded" Salvador as a partner means that Joseph replaced him as to the "debt obligation and everything about the business and property of the partnership." But Carlos, one of the partners, testified on direct examination as follows: Q. There had been four partners in the motel, one of whom was your brother, Salvadore [sic], as shown by the records. A. Yes. Q. Then it went into Jacqueline, Inc., this $200,000? A. Right. Q. Who were the three partners for whom it went into there? A. Myself, Frank Occhipinti, and Roy Occhipinti. Q. Had you made any arrangements with your brother Salvadore [sic] as to the reasons why he did not acquire an interest in that transaction? A. He just didn't *117 want an interest in it. Q. Did you take over his interest in it? A. Yes. Q. Does that mean that at that point you had one-half of the $200,000 interest and the two Occhipinti men each had a fourth? A. That is right. In the face of this testimony we cannot hold that Town & Country is entitled to deductions for interest paid to the Pension Fund during its taxable years 1961 and 1962; nor is either Salvador or Joseph entitled to any deduction for the payments of interest made by Town & Country. [5] See Nelson v. Commissioner, 281 F. 2d 1, 5 (C.A. 5, 1960), affirming a Memorandum Opinion of this Court. 23,185(M)]. Issue 3. Interest - Rex Finance Company Findings of Fact On or about November 25, 1960, Town & Country obtained a 12-month loan in the amount of $12,000 from Rex Finance Company. The loan was discounted in advance at 10 percent or $1,200, and carrying charges of 1 percent or $120 were imposed, making a total of $1,320. This total amount was deducted by Town & Country as interest for its taxable year 1961. In addition to *118 deducting the $1,320, Town & Country claimed an interest deduction of $820 with respect to this loan for its taxable year 1962. Thus, Town & Country claimed deductions totaling $2,140 for interest paid to Rex Finance Company, which is $820 more than the entire amount of interest ($1,320) paid. The repayment history of this loan is as follows: Date ofPayment
Payment
Balance
11-25-60
$12,000.00
12-27-60
1,000.00
11,000.00
1-19-61
1,000.00
10,000.00
2-16-61
1 ,000.00
9,000.00
3-21-61
1,000.00
8,000.00
4-21-61
1,000.00
7,000.00
5-29-61
1,000.00
6,000.00
6-21-61
1,000.00 5,000.00
7-21-61
1,000.00
4,000.00
8-21-61
1,000.00
3,000.00
9-20-61
1,000.00
2,000.00
10-20-61
1,000.00
1,000.00
11-29-61
1,000.00 The parties have stipulated as follows: The aforementioned $1,320.00 in no event is deductible as claimed. Assuming, without deciding, that all other requirements of deductibility of the Internal Revenue Code of 1954 were met with respect to this item, at all events said item should have been amortized at the rate of $110.00 per month over the life (12 months) of the loan. Thus, in no event could more than $220.00 have been *119 claimed as a deduction as interest with 964 respect to this item for Town & Country's taxable year ended January 31, 1961, and the balance, $1,100.00, must, if otherwise allowable, at all events have been claimed as a deduction as interest with respect to Town & Country's taxable year ended January 31, 1962. It is further stipulated as follows: Petitioners concede as to this issue that if any interest deduction is found by the Court to be allowable, then any such interest deduction must be amortized ratably over the life of the loan as shown hereinabove. Conversely, in the event that the Court finds as to this issue that no interest deduction is allowable, then petitioners concede that an additional disallowance of interest claimed in the amount of $220.00 for the taxable year 1961, over and above the statutory notice disallowance for that taxable year, is proper. Opinion The positions of the parties on this issue are almost hopelessly muddled. The only mention made of this issue in petitioners, opening brief is the following statement: Respondent, by his letter of preliminary issues forwarded to the Court under date of 2 August 1968, conceded the deductibility of $1,100.00 *120 for 1-31-61. Petitioners now concede non-deductibility of $820.00 for 1-31-62. Respondent's brief places primary emphasis upon the timing of the deduction but also argues that petitioners failed to show that the debt was that of Town & Country. Petitioners' reply brief argues that respondent's assertion that this debt, as well as certain others, was not Town & Country's was raised too late. Respondent's reply brief notes petitioners' "concession" regarding the taxable year 1962, and reiterates his earlier arguments. While the Preliminary Statement of Issues [6] filed with the Court on August 5, 1968, shows only $820 in controversy for the taxable year 1962, and nothing in controversy for the immediately preceding year, we do not interpret that document, when read in the light of the above statements quoted from the stipulations, to constitute a concession by respondent that interest of $1,100 is deductible for the taxable year 1962. In view of the obvious misunderstandings of the parties, we have decided to disregard any "concessions" by either party on brief or in the Preliminary Statement of Issues, and treat the entire issue as remaining open for decision solely on the stipulated *121 facts and the concessions made therein, no oral testimony or other documentary evidence having been offered on this issue by either party. As to respondent's argument that petitioners have failed to show that the $12,000 loan was made to Town & Country, the first paragraph of stipulation 107 states that: Town & Country claimed a deduction for interest in the amount of $1,320.00 in connection with money borrowed from Rex Finance Company, specifically, in connection with a 12-month loan from Rex Finance Company in the amount of $12,000.00 made on or about November 25, 1960. We think a fair reading of this sentence - which is the only statement in the record on this question - requires the conclusions that the money was borrowed by Town & Country and that Town & Country is entitled to a deduction *122 for the interest payments. While the second paragraph of stipulation 107 refers to "other requirements of deductibility," we find nothing in the record to indicate that petitioner was given notice that it was respondent's position at the time of the trial that the loan was not made to Town & Country. Since the parties have stipulated that if a deduction is allowable, the interest is to be deducted ratably over the life of the loan, we hold that Town & Country is entitled to interest deductions of $220 in its taxable year 1961 and $1,100 in its taxable year 1962. Issue 4. Allegedly Omitted Income of $3,000 Findings of Fact As shown by a duplicate deposit slip in Town & Country's records, a check in the amount of $3,000 was deposited on October 31, 1960, in Town & Country's bank account with the Whitney National Bank. The deposit slip bears the notation: "Re-payment of loan made to Leo Terrebonne - by T&C." Town & Country did not include the $3,000 in gross income on its partnership return filed for the taxable year 1961, or on 965 its returns for any other taxable year. The $3,000 composes part of a $5,000 adjustment to Town & Country's income for its taxable year 1961 *123 made in the notices of deficiency, under the designation "Income increased." Opinion The only evidence presented on this issue is summarized above. There is no evidence as to who made the notation on the deposit slip, when it was made, or the circumstances under which it was made. The partnership returns do not reflect any liability from Leo Terrebonne, and there is no evidence that any bookkeeping entries were made in connection with the deposit. We therefore conclude that petitioners have not satisfied their burden of proving that respondent erred in determining that the $3,000 should be added to Town & Country's income. Issue 5. Taxability of $2,000 Received From Rex Finance Company Findings of Fact The parties stipulated that: General Journal Entry No. 3 (GJ3), appearing on Town and Country's books as of November 30, 1960, and which is set forth below, shows that Town and Country received $21,500.00 either by cash or by check as of that date and $2,000.00 of the monies received as of that date as reflected by the journal entry as having been received from Rex Finance Company: Dr.
Cr.
"Cash"
$21,500.00
N. P. Joe Marcello
$ 4,500.00
N. P. Holiday Inn (West)
10,000.00
N. P. Rex Finance Co
2,000.00
Loan Rec. Leon S. Poirier
5,000.00
*124 To charge to proper bank deposits credited to cash. Town & Country did not include the $2,000 recorded as having been received from Rex Finance Company in gross income on its partnership return filed for its taxable year 1961, or on its returns for any other taxable year. The $2,000 composes the remainder of the $5,000 adjustment made in the notices of deficiency, noted in our Findings under Issue 4. Opinion Respondent introduced no evidence to support his determination that the $2,000 constituted taxable income, and relies solely on the argument that the burden of proof rested with petitioners. To establish that respondent erred in his determination, petitioners rely primarily upon the journal entry made in the regular course of Town & Country's business, and argue that the language of the stipulation, on its face, shows that the $2,000 was the proceeds of a note payable to Rex Finance Company. The issue is factual and, considering the record as a whole, we are convinced of the correctness of petitioners' position. The bookkeeping entry in the business records of Town & Country, while not conclusive, is entitled to consideration. See Cluett, Peabody & Co., 3 T.C. 169 (1944); *125 Sam E. Wilson, Jr., 20 T.C. 505 (1953), remanded on other grounds 219 F. 2d 126 (C.A. 5, 1955), on remand 27 T.C. 976 (1957), affirmed per curiam 255 F. 2d 702 (C.A. 5, 1958). Additional evidence shows that Town & Country, or its partners, obtained loans from Rex Finance Company on other occasions. See, e. g., Issue 3 above. The partnership return filed by Town & Country for its taxable year 1960 shows a note (or notes) payable to Rex Finance Company in the amount of $7,000, and the partnership return for its taxable year 1961 shows a note (or notes) payable to Rex Finance Company amounting to $10,000. Furthermore, respecting the stipulated journal entry, we note that the balance sheet attached to the partnership return for the taxable year 1961 disclosed a loan (or loans) payable to Holiday Inn West in the amount of $15,000 and a note payable to Joseph Marcello in the amount of $4,500. We are satisfied that petitioners have carried their burden of proving that the $2,000 received from Rex Finance Company was not taxable income. Issue 6. Linen Service Findings of Fact In the course of the operation of its motel, which had about *126 100 guest units, Town & Country incurred substantial expenses for linen service. Until May 22, 1961, its linen service was provided by New Orleans Linen Service (hereinafter New Orleans Linen). On this date Town & Country negotiated and received a $10,000 loan from Loop Linen Service (hereinafter Loop Linen), and thereafter it obtained linen service from the latter. Prior to its taxable year 1961, Town & Country had fallen into arrears on its account with New Orleans Linen and, as a result, was required to purchase its linen service on a cash basis. During its taxable 966 year 1961, and until May 22, 1961, Town & Country, as a general rule, made payments on the arrearages to New Orleans Linen by check, and payments for current service from petty cash. When payments were made from petty cash, an employee of Town & Country withdrew funds from the cash register and paid them to a representative of New Orleans Linen. The cash register was then reimbursed in the following manner: Checks drawn on Town & Country and payable to "Cash." covering the cash payments to New Orleans Linen as well as other expenditures also paid by cash, were endorsed on behalf of Town & Country and deposited *127 in its bank account. The purposes for which the petty cash payments had been made were recorded on the corresponding check stubs. The following table shows the linen service expenses of the motel compared with the revenue from room rentals for the taxable years 1958, 1959, 1960, 1961, and 1962: 1958
1959
1960
1961
1962
Room rental revenue
$270,967.44
$220,598.21
$207,991.20
$192,364.15
$192,364.15
$177,489.64
Linen service
16,293.90
12,337.88
10,732.92
14,618.67
8,371.75 The disbursement of $14,618.67 for the taxable year 1961 includes both current expenses and payments of arrearages. The amounts claimed by Town & Country as deductions for linen service expenses for its taxable years 1961 and 1962, and the amounts allowed (representing the payments by check) and disallowed by respondent for those years are as follows: Taxable Year1961
Taxable Year1962
Amount claimed
$14,618.67
$8,371.75
Amount allowed
4,153.20
5,913.58
Amount disallowed
10,465.47
2,458.17
Town & Country made cash payments for linen service in the amounts of $9,023.73 and $2,048.27 during its taxable years 1961 and 1962, respectively. *128 These cash payments are allowable deductions, in addition to the amounts previously allowed by respondent. Opinion Our findings on this purely factual issue are based on the undisputed testimony of the managers of Town & Country, an accountant's analysis, and a summary of the check stubs and related records. While the revenue from room rentals for the taxable year 1961, shown in our findings, was lower than in prior years, thus suggesting that expenses for linen service would similarly decline, the total linen service deduction here allowed for that year is correspondingly lower when adjusted for the payments of arrearages. Issue 7. Jefferson Parish Sales Tax Findings of Fact For its taxable year 1960 Town & Country paid a 2 percent sales tax to the State of Louisiana in the amount of $3,923.33. However, it failed to pay a 1 percent sales tax which was due the Parish (County) of Jefferson for the calendar year 1959. On January 16, 1961, Town & Country drew a check to Jefferson Parish in the amount of $1,963.80 in payment of the 1959 unpaid sales tax. During the period from February 1, 1959, through January 19, 1960, Town & Country collected sales tax from its customers *129 and included the tax as a part of its room rental revenue. On January 20, 1960, Town & Country changed its method of recording its sales tax collections, and thereafter revenues from room rentals and sales taxes collected from customers were accounted for separately. On its partnership return for its taxable year 1960, Town & Country reported rental revenue of $207,991.20, and claimed a deduction of $136.25 for sales tax covering the period from January 20, 1960, to January 31, 1960. On its return for its taxable year 1961, Town & Country claimed a deduction for the $1,963.80 paid to Jefferson Parish as delinquent sales taxes for the prior year. Respondent disallowed the latter deduction. Opinion Respondent steadfastly maintains that no deduction is allowable for Town & Country's taxable year 1961 for the 1959 Jefferson Parish sales tax paid on January 16, 1961. Respondent argues that sales taxes imposed on the consumer become a trust fund and are neither includable in gross income when collected nor deductible when paid. See G.C.M. 25579, 1948-1 C.B. 36. Respondent at least implicitly recognizes that Town & Country overstated its gross 967 receipts for its taxable *130 year 1960, to the extent that the Jefferson Parish sales tax collected in 1959 was included therein. But, respondent argues, the record does not show precisely the amount of the Jefferson Parish sales tax which was included in Town & Country's income for its taxable year 1960, because it was not shown how much of the tax was collected in the 11 months of 1959 which are in that taxable year. Since both of Town & Country's taxable years 1960 and 1961 are before us, the obviously wrong answer is to deny the claimed deduction for 1961 and to make no income adjustment for 1960. The record shows that the rate of the Louisiana state sales tax was twice the rate of the Jefferson Parish sales tax. The record further shows that Town & Country paid state sales tax of $3,923.33 for its taxable year 1960. Therefore, we hold that Town & Country's income for its taxable year 1960 should be reduced by a sum equal to one-half of this amount, i.e., $1,961.66. Since Town & Country's taxable year 1960 is before us, we need not consider petitioner's argument under section 1311 and related provisions. Of course, the deduction of $1,963.80 claimed for the taxable year 1961 is not allowable. Issues 8 *131 and 9. Medical Expense and Standard Deduction In the notice of deficiency issued to Joseph C. and Barbara Marcello for 1961, respondent reduced by $143.06 the medical expenses deducted under section 213, and in the notice for 1962 increased the standard deduction claimed under section 141. Further adjustments to these items, which involve mathematical computations keyed to adjusted gross income, will be required under the Rule 50 computation to reflect the concessions made by the parties and our conclusions on the issues discussed above. Issue 10. Additions to Tax Section 6653(a) [7] provides that if any part of any underpayment of tax is due to "negligence or intentional disregard of rules and regulations (but without intent to defraud)," an amount equal to 5 percent of the underpayment shall be added to the tax. The adjustments to petitioners' taxes all relate to income and deductions of Town & Country, with the exceptions, in the case of Joseph C. and Barbara Marcello, of the decrease in their medical expense deduction for 1961 and the increase in their standard deduction for 1962. *132 The negligence in reporting partnership income may be imputed to the partners. Marcello v. Commissioner, supra. On careful consideration of the facts, we think the underpayments were due, in part, to negligence in the reporting of the partnership income. For example, it is stipulated that Town & Country erroneously claimed depreciation for the taxable years 1960, 1961, and 1962 on furniture purchased for the personal residences of Rosario (at a cost of $19,862.96) and Anthony Occhipinti (at a cost of $7,801.70); that depreciation was charged on an item which had been expensed in a prior year; and that mathematical errors in the return accounted for part of the deficiencies for the taxable years 1960 and 1961. For its taxable years 1961 and 1962 the partnership deducted a total of $2,140 as interest paid to Rex Finance Company, a sum exceeding the total interest paid by $820. Petitioners also stipulated that claimed deductions of $6,906.17 for taxable year 1960, $11,004.40 for taxable year 1961, and $5,458.39 for taxable year 1962 were not allowable. The record contains no explanation as to how these errors came to be made in Town & Country's returns and carried over *133 into petitioners' returns. Cf. Rhett W. Woody, 19 T.C. 350, 354-355 (1952). Neither the partnership returns nor, apparently, the partnership records contain any indication that the note to the Pension Fund, see Issue 2 above, was not a partnership obligation and rather was an obligation of Carlos, Rosario, and Frank. Town & Country's records thus mixed nonpartnership with partnership transactions and this led to underpayments of tax. Petitioners have not shown that the additions to tax under section 6653(a) were erroneously determined. Decisions will be entered under Rule 50. 968 Footnotes
1. These cases were tried in consolidation with Carlos Marcello, Docket No. 3532-64; Anthony and Jeannine Marcello, Docket No. 3533-64; Jacqueline Marcello, Docket No. 3534-64; Carlos and Jacqueline Marcello, Docket Nos. 3744-65 and 2908-66; Frank and Lady Patricia Occhipinti, Docket No. 5691-65; Rosario and Julia Occhipinti, Docket No. 5760-65; Churchill Farms, Inc., Docket No. 6307-66; and Bayou Verret Land Co., Inc., Docket No. 6308-66. The present cases are severed for a separate opinion.↩
2. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. All section references are to the Internal Revenue Code of 1954, as amended.↩
3. All references to Town & Country's "taxable year" are to the 12-month period ending on January 31.↩
4. Town & Country's partnership returns show liabilities to the Whitney National Bank of $32,600, $18,040.35, $21,040.35, $13,040.35, and $2,040.35 as of the end of the taxable years 1958, 1959, 1960, 1961, and 1962, respectively.↩
5. We do not here decide the rights of Carlos, Frank, and Rosario to interest deductions in their individual capacities.↩
6. In view of the numerous issues involved in these dockets and others consolidated with them for trial, the many concessions made by each of the parties by stipulation and at trial, and the probability that further concessions would be made on brief, the parties were directed, upon completion of the trial, to prepare a statement of the issues remaining for decision by the Court.↩
7. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes. - If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩